UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YASMANY ROJAS-MENDEZ,

          Petitioner,

                                    Case No.: 2:26-cv-10660

v.                                 Hon. Gershwin A. Drain

MARKWAYNE MULLIN, *Secretary of the*
*U.S. Department of Homeland Security*, and
KEVIN RAYCRAFT, *Immigration and*
*Customs Enforcement, Director of Detroit*
*Field Office*,[1]

          Respondents.
  _____/

## I.  INTRODUCTION

Petitioner Yasmany Rojas-Mendez is a Cuban national who entered the United States in 1997 and was paroled. ECF No. 4-2, PageID.63; ECF No. 4-3. He has been detained without bond by Immigration and Customs Enforcement ("ICE") since July 23, 2025. ECF No. 1, PageID.2. Petitioner seeks a writ of habeas corpus finding his detention unlawful and ordering his release or a prompt bond hearing. *Id.* at PageID.3.

---

[1] The lawsuit named Kristi Noem as the Secretary of the U.S. Department of Homeland Security. As she no longer holds office, her successor is automatically substituted in her place. *See* Fed. R. Civ. P. 25(d).

The Court held a hearing on the petition on May 4, 2026. For the reasons that follow, Petitioner's petition for habeas corpus is DENIED WITHOUT PREJUDICE.

## II. BACKGROUND

Petitioner Rojas-Mendez arrived in the United States at a port of entry in Miami, Florida in May 1997.[2] ECF No. 4-3, PageID.67. He did not possess a valid immigration document, and immigration officials paroled him into the United States under 8 U.S.C. § 1182(d)(5), which provides that the Secretary of Homeland Security "may parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States[.]" 8 U.S.C. § 1182(d)(5)(A). Petitioner was paroled pursuant to a Presidential Policy dated October 14, 1994, providing for the public-interest parole of accompanied juveniles. ECF No. 4-3, PageID.67. In the briefing, neither party stated if or when Petitioner's parole expired, although Petitioner's parole document asserts that his

---

[2] Petitioner's immigration documents are seemingly contradictory regarding the date his entry and parole. His parole document states that he was granted parole in the United States on May 18, 1995 and was paroled until May 17, 1997. ECF No. 4-3, PageID.67. One of Petitioner's I-261 forms, dated September 3, 2025, also states that he was paroled on May 18, 1995. ECF No. 4-5, PageID.74. However, Petitioner's other I-261, dated July 30, 2025, states he was paroled on May 17, 1997. ECF No. 1-1, PageID.21. Petitioner's I-213 also provides that he was paroled on May 17, 1997. ECF No. 4-2, PageID.63. The Government asserts that Petitioner entered and was paroled in 1997, ECF No. 4, PageID.43, and Petitioner conceded that date at the hearing.

parole expired two years after his entry. *See* ECF No. 4-3, PageID.67. At the hearing, the Government confirmed—consistently with Petitioner's parole document—that Petitioner's parole expired two years after his entry in 1997, and Petitioner did not contest that fact.

Petitioner has lived in the United States for the past three decades.[3] During that time, he has received multiple employment authorizations. ECF No. 4-2, PageID.63. He has also been convicted of several crimes; namely, assault and battery in 1999, second degree retail fraud in 1999, domestic violence in 2002, domestic violence in 2003, third degree retail fraud and attempted assaulting/resisting/obstructing an officer in 2003, failure to stop after a collision in 2003, operating a vehicle with a suspended license in 2004, and second degree retail fraud in 2007. *Id.* at PageID.63–64. Petitioner's wife and five children are U.S. citizens residing here in the United States. *Id.* at PageID.62.

Immigration officials arrested Petitioner to pursue his removal on July 23, 2025.[4] Officials charged Petitioner with inadmissibility under 8 U.S.C. §

---

[3] There was some inconsistency in Petitioner's petition regarding how long he has lived here. At one point in his petition, Petitioner stated that he has been living in the United States for "nearly two years," ECF No. 1, PageID.14, even though other details make it appear that he has been here for nearly thirty. At the hearing, it was uncontested that Petitioner arrived in 1997 and has been here since then.

[4] There was uncertainty in the briefing about Petitioner's arrest date. Petitioner and the Government both claimed that Petitioner was arrested on July 23, 2025. ECF No. 1, PageID.2. Petitioner's I-213 also states that he was arrested on July 23, 2025. ECF

3

1182(a)(7)(A)(i)(I), which provides that an individual without a valid entry document is inadmissible. ECF No. 4-4, PageID.72. Petitioner's Notice to Appear classifies him as an "arriving alien." *Id.* Under 8 U.S.C. § 1225(b)(1), arriving aliens who are inadmissible under § 1182(a)(7) shall be ordered removed via expedited removal procedures unless they apply for asylum. Arriving aliens seeking asylum are required to be detained pending a final determination of the credible fear of persecution, and if they are found not to have such fear, until removed. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). In response, Petitioner applied for asylum and withholding of removal, ECF No. 4, PageID.44, which an immigration judge denied. ECF No. 4-6. Petitioner appealed the immigration judge's denial, which is still currently pending. ECF No. 4-7. Meanwhile, Petitioner has been detained without any hearing to determine whether he is eligible for bond.

Petitioner filed the instant Petition for Writ of Habeas Corpus, asserting that his detention is unlawful and unconstitutional. Petitioner argues that detention under

---

No. 4-2, PageID.62. However, Petitioner also stated at a couple points in his petition that he was "detained by ICE on or about January 6, 2026." ECF No. 1, PageID.2. This date is not reflected anywhere in Petitioner's immigration documents. Moreover, at one point in his petition, Petitioner stated that he was released on his own recognizance in 2024, but does not explain why he was detained in 2024 and none of Petitioner's immigration documents reflect such detention or recognizance. *Id.* at PageID.15. At the hearing, both the Government and Petitioner confirmed that Petitioner has been detained since July 23, 2025 and there was no mention about being released on recognizance in 2024.

8 U.S.C. § 1225(b)(2) is incorrect,[5] and that he should be detained under § 1226(a)—under which he would be entitled to a bond hearing. ECF No. 1, PageID.5. Petitioner also argues that his detention violates his Fifth Amendment due process rights. *Id.* at PageID.10.

The Government responded in opposition. The Government first argues that under 8 U.S.C. § 1252, the Court lacks subject matter jurisdiction to review the application of § 1225(b)(1) to Petitioner. ECF No. 4, PageID.46–47. The Government also argues that Petitioner is properly detained under § 1225(b)(1) because he was inadmissible at the time he arrived in the United States, and he reverted to the status he had at the time of arriving in the United States once his parole was revoked. *Id.* at PageID.51. The Government asserts that § 1225(b)(2) also applies to Petitioner because he is an "applicant for admission." *Id.* at PageID.55. Finally, the Government argues that § 1226(c)(1) applies to Petitioner because of his criminal history. *Id.* at PageID.55–56. The Government also claims that Petitioner has received all the due process protections he is entitled to. *Id.* at PageID.56.

### III.   LEGAL STANDARD

Under 28 U.S.C. § 2241, a district court has the "authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of

---

[5] Petitioner's argument is premised on the inapplicability of § 1225(b)(2), but the Government also argues that Petitioner is subject to mandatory detention under § 1225(b)(1) and § 1226(c)(1). *See* ECF No. 4-4, PageID.69.

the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004). "Section 2241 confers jurisdiction to hear habeas corpus challenges to the legality of a noncitizen's detention." *Lopez v. Olson*, --- F. Supp. 3d ---, No. 3:25-cv-654-DJH, 2025 WL 3217036, at *2 (W.D. Ky. Nov. 18, 2025). "Although the Court 'may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution.'" *Id.* (quoting *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020)).

## IV.   DISCUSSION

### A. Statutory Framework

#### a.  Full vs. Expedited Removal

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") "established two main processes for removing noncitizens deemed ineligible to enter or remain in the United States." *Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294, at *4 (E.D. Mich. Oct. 29, 2025). The "usual removal process," under 8 U.S.C. § 1229a, provides for "an evidentiary hearing before an immigration judge, where a noncitizen may 'attempt to show that he or she should not be removed.'" *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 291 (E.D.N.Y. 2025) (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 106 (2025)). In these proceedings, noncitizens "have a right to hire counsel, to a

6

reasonable opportunity to examine evidence against them, to present evidence on their own behalf, and to cross-examine any government witnesses." *Id.* (citing 8 U.S.C. § 1229a(b)(4)(A)–(B)).

The other removal process, prescribed under 8 U.S.C. § 1225(b)(1), is an "even more streamlined form of proceeding applicable only to certain noncitizens: expedited removal." *Coalition for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 59 (D.D.C. 2025) ("*Coalition*"). Expedited removal proceedings apply to noncitizens who satisfy two criteria: first, they are inadmissible because they lack proper entry documents or engaged in fraud or misrepresentation on their applications for admission; and second, they are "arriving" in the United States, or have not been admitted or paroled and have not been physically present in the United States for the 2-year period prior to the determination of their inadmissibility. *See Rodriguez-Acurio*, 811 F. Supp. 3d at 291; 8 U.S.C. § 1225(b)(1); 8 U.S.C. § 1182(a)(6)(C), (a)(7).

In expedited removal proceedings, an immigration officer, not an immigration judge, conducts an initial fact-finding to determine whether expedited removal is applicable, in addition to "(a) [the noncitizen's] identity, alienage, and inadmissibility, and (b) whether they intend to apply for asylum, fear persecution or torture, or fear returning to their country of origin." *Coalition*, 805 F. Supp. at 59 (citing 8 C.F.R. § 235.3(b)(2)(i), (b)(4)). If the noncitizen is inadmissible and does

7

not indicate an intent to apply for asylum, the immigration officer issues a notice and order of expedited removal, which is reviewed by a supervising officer, who then signs off on the determination. *Salgado Bustos*, 2025 WL 3022294, at \*4. If the noncitizen does assert an intent to apply for asylum, an immigration officer conducts a "credible fear review." If it is determined that the noncitizen has a credible fear of persecution upon returning to his home country, the noncitizen "will be moved to full [§ 1229a] removal proceedings or to USCIS administrative asylum proceedings." *Id.* (citing 8 C.F.R. § 208.30(f)).

Importantly, judicial review of certain matters "relating to section 1225(b)(1)" is sharply circumscribed. *See* 8 U.S.C. § 1252(a)(2)(A). That section provides that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision… no court shall have jurisdiction to review—
> (i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title,
> (ii) except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of such section,
> (iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or
> (iv) except as provided in subsection (e), procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

*Id.* The section continues to provide that the only bases of habeas review of any determination made under § 1225(b)(1) are limited to the following:

> (A) whether the petitioner is an alien,

8

(B) whether the petitioner was ordered removed under such section, and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

*Id.*(e)(2).

### b.  Detention Under § 1225(b) vs. § 1226

Under "8 U.S.C. § 1225, an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (citing 8 U.S.C. § 1225(a)(1)). These noncitizens "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id.* As discussed above, "[s]ection 1225(b)(1) concerns the inspection of noncitizens arriving in the United States and certain other noncitizens who have not been admitted or paroled." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1247 (W.D. Wash. 2025) (cleaned up). Section 1225(b)(2) concerns the inspection of other "applicants for admission" who are "seeking admission." *See id.* For noncitizens falling under (b)(1) or (b)(2), detention is mandatory unless they are temporarily released on parole "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288; *see* 8 U.S.C. § 1182(d)(5)(A); 8 U.S.C. § 1225(b)(1)(b)(iii)(IV), (b)(2)(A).

9

In contrast, 8 U.S.C. § 1226(a) provides "a discretionary detention framework," *see Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 777 (E.D. Mich. 2025), for "aliens already present in the United States." *Jennings*, 583 U.S. at 303. That section permits the arrest and detention of a noncitizen pending a decision on whether the noncitizen is to be removed from the United States, but provides that the noncitizen may be released on bond of at least $1,500 or on conditional parole. 8 U.S.C. § 1226(a)(2). This section "is considered the 'usual removal process.'" *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 256 (D. Me. 2025) (citing *Thuraissigiam*, 591 U.S. at 108). "The only exception to section 1226's discretionary detention regime is that the Attorney General 'shall take into custody' any noncitizen involved in certain enumerated criminal activities." *Id.* (citing 8 U.S.C. § 1226(c)(1)).

As provided in § 1226(c)(1), a noncitizen is subject to mandatory detention if he:

A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year,
(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, or
(E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and

10

(ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]

8 U.S.C. § 1226(c)(1).

## B.  Statutory Analysis

Petitioner's statutory analysis in his petition is deficient. His entire statutory argument is predicated on the proposition that his detention under § 1225(b)(2) is unlawful, and that § 1226(a) should apply to him instead. *See* ECF No. 1, PageID.6 ("This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2)."). But Petitioner ignores the other grounds for mandatory detention that are applicable to him.

To begin, in Petitioner's Notice to Appear, the Government classified him as an "arriving alien" who is subject to removal under § 1182(a)(7) for lacking valid immigration documentation. Assuming this classification is correct, it would subject Petitioner to removal under § 1225(b)(1) with mandatory detention. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). This is a distinct issue that involves considering whether a parolee may revert to the status of an "arriving alien" for purposes of § 1225(b)(1) when his parole is terminated. Notably, some courts have faced this issue and concluded that a former parolee cannot revert to an arriving alien simply because his parole was terminated. *See Rodriguez-Acurio*, 811 F. Supp. 3d at 306–07 (holding

11

that under the plain language of the statute, a noncitizen who has been paroled and living in the United States cannot revert to an "arriving" alien upon revocation of parole); *Coalition*, 805 F. Supp. 3d at 90–91 (same). Petitioner fails to invoke any of these authorities in support of his case. The outcome in those cases, moreover, is not a given and requires statutory interpretation.[6]

Petitioner's only reply to the Government's § 1225(b)(1) argument is that § 1225(b)(1) is not applicable because he was paroled, and the Government failed to provide him with the procedures required for revocation of parole. ECF No. 5, PageID.84–85. This is an entirely separate argument divorced from the statutory

---

[6] Section 1182(d)(5)(A) provides that if a noncitizen is paroled, it is not considered "an admission," and when parole ends, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission[.]" 8 U.S.C. § 1182(d)(5)(A). The Department of Homeland Security's "longstanding" regulations have provided that under this statutory provision, an arriving alien *remains* an arriving alien even if paroled and even after such parole is revoked. *See Coalition*, 805 F. Supp. 3d at 90; 8 C.F.R. § 1.2; 62 Fed. Reg. at 10313. After *Loper Bright Enterprises v. Raimondo*, although courts need not defer to agency interpretations of a statute, an agency's longstanding interpretations may have the "power to persuade." 603 U.S. 369, 402 (2024). Supreme Court case law has also stated that a noncitizen parolee remains "in theory of law at the boundary line and… gain[s] no foothold in the United States." *Leng May Ma v. Barber*, 357 U.S. 185, 189 (1958). Given these contradictory considerations, Petitioner should have offered some reasoned argument as to why § 1225(b)(1) is inapplicable to him. *See Berzanskis v. FCA US, LLC*, 143 F.4th 718, 725 (6th Cir. 2025) ("In our adversarial system, we follow the principle of party presentation, which means that we 'rely on the parties to frame the issues for decision and assign courts the role of neutral arbiter of matters the parties present.'").

text, and Petitioner makes no effort to explain how his discussion of parole revocation procedures relates to § 1225(b)(1).[7] Without any reasoned argumentation, Petitioner has failed to demonstrate that § 1225(b)(1) does not apply to him. *United States v. Sandridge*, 385 F.3d 1032, 1035 (6th Cir. 2004) ("The case precedent in this circuit instructs courts to withhold judgment on issues not fully developed by the briefs or in the record. Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Furthermore, Petitioner wholly failed to respond to the Government's argument that the Court lacks jurisdiction under § 1252(a)(2)(A)(iii) to consider whether § 1225(b)(1) is applicable to him. Under that provision, courts are prohibited from reviewing whether the application of § 1225(b)(1) to an individual alien is appropriate, even on habeas review. 8 U.S.C. § 1252(a)(2)(A)(iii); *see Shunaula v. Holder*, 732 F.3d 143, 147 (2d Cir. 2013) ("1252(a)(2)(A) deprives this court of jurisdiction to hear challenges relating to the Attorney General's decision to invoke expedited removal."); *Khan v. Holder*, 608 F.3d 325, 329–30 (7th Cir. 2010) ("[W]e lack jurisdiction to inquire whether the expedited removal procedure to which the Khans were subjected was properly invoked."); *Diaz Del Cid v. Barr*, 394 F. Supp. 3d 1342, 1346 (S.D. Fla. 2019) (stating that § 1252(a)(2)(A)(iii) "applies

---

[7] To the extent this is a due process argument, the Court addresses it in the due process section of this Opinion.

to foreclose Petitioner's claims."). Petitioner's failure to address § 1252(a)(2)(A)(iii) in any of his filings is "a tacit acknowledgement that the section applies." *Perez v. Mordant*, No. 2:25-cv-00947-SPC-DNF, 2025 WL 3466956, at *2 (M.D. Fla. Dec. 3, 2025).

To get around § 1252(a)(2)(A)'s jurisdictional bars, some courts have found that the Suspension Clause of the U.S. Constitution allows for habeas review of claims relating to § 1225(b)(1). *See id.* at *3; *see also Noori v. LaRose*, No. 25-cv-03006-BAS-MMP, 2025 WL 3295386, at *2–*3 (S.D. Cal. Nov. 26, 2025). But again, Petitioner did not present a Suspension Clause argument in reply to the Government's invocation of § 1252(a)(2)(A)(iii). And determining the scope of a petitioner's habeas rights under the Suspension Clause "is not an easy task." *Castro v. U.S. Dep't of Homeland Sec.*, 163 F. Supp. 3d 157, 168 (E.D. Pa. 2016).[8] As before, because Petitioner has offered nothing in the way of a Suspension Clause argument, that argument is also waived.

Even setting aside the uncertainties surrounding § 1225(b)(1), Petitioner's criminal history clearly puts him into the purview of § 1226(c)(1)(E)'s mandatory

---

[8] To find that the Suspension Clause applies in a particular instance, a court must consider (1) the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; (2) the nature of the sites where apprehension and then detention took place; and (3) the practical obstacles inherent in resolving the prisoner's entitlement to the writ. *Boumediene v. Bush*, 553 U.S. 723, 766 (2008).

detention scheme. That provision, otherwise known as the Laken Riley Act, provides that when a noncitizen is convicted of certain acts—including theft—and lacks valid documentation for entry into the United States, he is subject to mandatory detention pending removal. *See* 8 U.S.C. § 1226(c)(1)(E). It is undisputed that Petitioner has multiple convictions for retail fraud, which "is considered a theft crime" in Michigan. *People v. Reed*, No. 263033, 2006 WL 3375050, at *2 (Mich. Ct. App. Nov. 21, 2006) (citing *People v. Parcha*, 575 N.W.2d 316, 321–22 (1997)). Petitioner, therefore, is subject to mandatory detention pending removal under the Laken Riley Act's plain language.

Petitioner seems to make an argument that § 1226(c)(1)(E) does not apply to him because he was on parole. ECF No. 5, PageID.86. Furthermore, at the hearing, Petitioner seemed to make the argument that his repeated work authorizations take him out of the purview of (c)(1)(E). The statute, however, makes no such distinction, and Petitioner failed to explain why these facts are legally relevant. Indeed, Petitioner's argument is at odds with his position that § 1225(b) is not applicable to his case and that he should fall under the purview of § 1226. If § 1225(b) is inapplicable and he does fall under the purview of § 1226, it would not be under subsection (a), because subsection (a) carves certain criminals in subsection (c)(1)(E) out of the discretionary detention scheme—and Petitioner has the requisite criminal history. *See Nielsen v. Preap*, 586 U.S. 392, 409 (2019) ("[S]ubsection (c)

15

is simply a limit on the authority [for granting discretionary bond] conferred by subsection (a).")

Petitioner also notes that his criminal convictions are nearly twenty years old, and questions why officials took so long to begin removal proceedings. ECF No. 5, PageID.86. But the Supreme Court has made clear that the mandatory detention requirement described in subsection (c) "appl[ies] to any alien linked with a predicate offense identified in subparagraphs (A)–([E]),[9] regardless of when or even whether the alien was released from criminal custody." *Preap*, 586 U.S. at 418. Thus, the age of Petitioner's convictions does not exempt him from § 1226(c).

Accordingly, Petitioner's statutory argument fails.[10]

## C. Due Process

The Due Process Clause of the Fifth Amendment forbids the Government from depriving any person of life, liberty, or property without due process of law.

---

[9] The Supreme Court decided *Preap* prior to the Laken Riley Act, which added subparagraph (E) to subsection (c). However, the addition of the Laken Riley Act does not affect any of the Supreme Court's reasoning in *Preap*.

[10] The Court does not address the Government's argument that § 1225(b)(2) applies to Petitioner. The Court simply notes that a majority of courts in this country have agreed with Petitioner's statutory interpretation regarding § 1225(b)(2). *See, e.g.*, *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025); *Martinez v. Hyde*, 792 F. Supp. 3d 211 (D. Mass. 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

16

U.S. Const. amend V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Indeed, "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "So, detainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *J.G.G.*, 604 U.S. at 673 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

To establish a violation of the Due Process Clause, a noncitizen must establish that he "has been deprived of a life, liberty, or property interest sufficient to trigger the protection of the Due Process Clause in the first place." *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020). Once it is determined that the Due Process clause applies, a court must determine whether a violation occurred by considering the three factors the Supreme Court set out in *Mathews v. Eldridge*: "(1) the private interest affected, (2) the risk of erroneous deprivation of that private interest and the value of any additional safeguards, and (3) the government's interest,

17

including the fiscal and administrative burden the additional safeguards would impose." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976)).

Petitioner argues that his detention violates the Due Process Clause of the Fifth Amendment. In his petition, Petitioner centers his due process argument on the premise that § 1225(b)(2) does not apply and § 1226(a) does, so the risk of erroneous deprivation is high, and the Government has little interest in enforcing mandatory detention here. ECF No. 1, PageID.11–12. But as the Court already discussed at length, Petitioner possibly falls under § 1225(b)(1) and certainly falls under § 1226(c)(1)(E), both of which mandate detention. Petitioner's argument in reply to the Government's response fares no better, as it continues to base his due process argument on the proposition that his detention should be governed by § 1226(a), and fails to offer a due process argument that is independent from the statutory text. ECF No. 5, PageID.88.

Petitioner's irrelevant parole argument from his § 1225(b)(1) analysis in the reply could arguably be construed as a due process argument. *See Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146–47 (W.D.N.Y. 2025) (finding that a noncitizen is entitled to certain due process protections prior to parole revocation). Petitioner claims that the Government did not follow the procedures required for revoking parole. ECF No. 5, PageID.84. Petitioner further claims that the Government must conduct a case-by-case assessment to terminate a noncitizen's

parole. ECF No. 5, PageID.85. But at the hearing, the Government asserted that Petitioner's parole expired in 1999, and Petitioner did not contest this fact. *See, e.g.*, ECF No. 4-3, PageID.67. Petitioner failed to address how the expiration of his parole factors into this analysis. Furthermore, Petitioner failed to explain what procedures the Government failed to follow. Indeed, when it comes to termination of parole, it is automatic if the time for parole expires and there is no requirement to give notice to the noncitizen. 8 C.F.R. § 212.5(e)(1). Thus, this underdeveloped argument also fails to present a cognizable due process claim.

For its part, the Government asserts that *Demore v. Kim* forecloses Petitioner's due process argument.[11] *See* 538 U.S. 510, 531 (2003). In *Demore*, the Supreme Court confronted the issue of whether mandatory detention under § 1226(c)(1) is constitutional. The Court noted that "detention during deportation proceedings" is a "constitutionally valid aspect of the deportation process." *Id.* at 523. The Court discussed Congress's intent in passing § 1226(c), which was to prevent criminal noncitizens—who were statistically more likely to abscond before removal—from fleeing during removal proceedings. *Id.* at 528. The Court also discussed that in removal proceedings where the noncitizen is detained under § 1226(c)(1), proceedings typically conclude within an average of 47 days (or 4 months if the

---

[11] The Government cites additional Supreme Court cases in support, but since *Demore* is on point and resolves the case for now, the Court will not address them.

19

noncitizen appeals). *Id.* at 529. In the end, the *Demore* court concluded that mandatory detention under § 1226(c) is not facially unconstitutional. *Id.* at 531. Given that *Demore* found mandatory detention under § 1226(c)(1) constitutional, and that is the statute under which Petitioner is certainly subject to mandatory detention, *Demore* seemingly forecloses Petitioner's due process argument.

Notably, some courts have found that *Demore* left open the possibility of as-applied challenges to mandatory detention under § 1226(c)(1), concluding that "the Due Process Clause requires an individualized assessment of flight risk and danger when detention under § 1226(c) becomes unreasonable in relation to the statute's purpose of facilitating lawful removal." *Rodriguez v. Frink*, --- F. Supp. 3d ---, No. 4:26-CV-00798, 2026 WL 709487, at *4 (S.D. Tex. Mar. 13, 2026); *see also Perera v. Jennings*, 598 F. Supp. 3d 736, 743–44 (N.D. Cal. 2022); *Singh v. Warden of the Golden State Annex Det. Facility*, No. 1:26-CV-00053-WBS-DMC-HC, 2026 WL 1088767, at *4–*5 (E.D. Cal. Apr. 22, 2026). However, Petitioner did not raise any such argument. Indeed, it does not appear that Petitioner seeks to raise an as-applied unconstitutionality argument at all in this case, for he seemingly concedes that "[d]ue process protections depend on the governing detention statute." ECF No. 5, PageID.88. Accordingly, the Court does not reach the *Mathews v. Eldridge* factors. Petitioner has failed to demonstrate that his detention violates his due process rights.

20

## V. CONCLUSION

Petitioner's petition was riddled with conflicting information, advanced several irrelevant arguments, and missed several valuable on-point arguments. The Court has been left with no choice but to deny the petition. However, the Court will deny the petition without prejudice, subject to an as-applied unconstitutionality argument under the Due Process Clause if such an argument is: (1) supported by case law and (2) potentially viable in the Sixth Circuit.[12] *See, e.g.*, *Haryana-Sandhir v. Warden of Golden State Annex*, No. 1:26-cv-0405 DJC SCR, 2026 WL 1079374, at *1 (E.D. Cal. Apr. 21, 2026) (recommending that the court deny the habeas corpus petition without prejudice, subject to a future as-applied challenge to petitioner's detention under § 1226(c)(1)); *Van Dan v. Warden of Golden State Annex*, No. 1:26-cv-00629 DJC SCR, 2026 WL 632523, at *3 (E.D. Cal. Mar. 6, 2026) ("[M]andatory detention statutes… and their implementing regulations are subject to constitutional limitations on an as-applied basis.").

Therefore, Petitioner's Petition for Habeas Corpus [ECF No. 1] is DENIED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

---

[12] The Court expresses no opinion on whether it would choose to follow persuasive authority allowing for as-applied challenges to the mandatory detention relevant to Petitioner's case, or whether any as-applied unconstitutionality claim by Petitioner would likely have merit.

22

Dated:  May 5, 2026                                        /s/Gershwin A. Drain
                                                          GERSHWIN A. DRAIN
                                                          United States District Judge